Eastern District of Kentucky
**FILED**
FEB 21 2020
LEXINGTON
ROBERT R. CARR
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>V.<br><br>ROBERT CHIPPERFIELD, JR.,<br>ROBERT EARL WALLACE,<br>TORREY WARD, and<br>NADER SARKHOSH,<br><br>Defendants. | CRIMINAL ACTION NO. 5:17-118-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the government's notice of intent to introduce 404(b) evidence (DE 329) and the Defendants objections (DE 341), which the Court will construe as a motion in limine. The notice, which is incorrectly docketed as a motion, expresses the government's intent to introduce evidence of previous drug trafficking involving planes flown by Defendant Nader Sarkhosh and his employees at Starjet. Defendant Sarkhosh's motion in limine seeks to prohibit the introduction of such evidence. Defendants Torrey Ward and Robert Chipperfield each joined in Sarkhosh's motion. (DE 360, 361.) For the reasons stated below, the Defendants' motion in limine (DE 341) is **GRANTED IN PART** and **DENIED IN PART**.

Robert Earl Wallace also joined in Sarkhosh's motion in limine. (DE 400.) However, in light of his rearraignment, the motion is moot as to Wallace.

1

## I. BACKGROUND

The government's notice describes two overall incidences of prior conduct related to Defendant Sarkhosh: the 2008 Hawaii Incident and the 2010 Hollywood Conspiracy. The government seeks to introduce testimony and evidence regarding both of those incidences.

In 2008, a plane chartered through Starjet—a company co-owned by Sarkhosh—was set to fly from Los Angeles, California to Hawaii with $1.5 million worth of marijuana on board. Passengers on the plane were posing as a film crew heading to a photoshoot. The marijuana was disguised as film equipment. Some of the "equipment" did not fit on the plane and the passengers refused to let the pilots attempt to repackage it. Additionally, other "equipment" was late, and the passengers refused to take off without it. Police were summoned and the drugs were seized.

In 2010, law enforcement broke up a Los Angeles drug trafficking ring (the "Hollywood Drug Ring") that used planes chartered through Starjet. The Hollywood Drug Ring would ship hundreds of pounds of cocaine from Los Angeles to Baltimore and millions of dollars in drug proceeds from Baltimore back to Los Angeles. Fourteen people were indicted in the conspiracy, including a pilot named Leonard Concepcion, who flew the drugs and cash on twelve different roundtrip flights. Flight records show Sarkhosh serving as pilot-in-command or second-in-command on eight individual flights. (DE 331-1 at 3-10.) The government's motion describes two instances involving the Hollywood Drug Ring where law enforcement intercepted drugs and money. First, on September 28, 2010, a plane chartered through Starjet[1] was flying the Hollywood Drug Ring when law enforcement stopped the plane in Salina, Kansas. Authorities seized 48 kilograms of cocaine on that flight. Concepcion told law enforcement Peku Karu—the other co-owner of Starjet—informed him

---

[1] Concepcion and Sarkhosh were not on this flight.

of the incident. Concepcion claimed that he grew concerned about continuing to fly for the Hollywood Drug Ring and discussed those concerns with Karu and Sarkhosh. Concepcion further stated that Karu and Sarkosh reassured him that law enforcement said Starjet did nothing wrong and he should continue doing the flights. Second, on November 2, 2010, a plane chartered through Starjet[2] was flying the Hollywood Drug Ring back to California when law enforcement seized luggage containing drug proceeds and arrested the passengers and Concepcion. Sarkhosh served as pilot-in-command and Concepcion served as second-in-command on this flight. Law enforcement seized $763,815 of drug proceeds from a suitcase, $24,366.50 of drug proceeds in a backpack, and $40,000 of drug proceeds from an airplane microwave. Concepcion stated that the money in the microwave was payment for the flight. Notably, the Hollywood Drug Ring exclusively made payments in cash. Additionally, there is evidence that proceeds from the Hollywood Conspiracy were structured into a business account by the name of World Jet. The various deposits were structured to avoid the filing of a Currency Transaction Report ("CTR"). Sarkhosh was one of two directors of World Jet, and Concepcion served as its chief financial officer. Sarkhosh and Concepcion were the authorized signers on that account. Concepcion eventually pleaded guilty to money laundering in connection with this conspiracy. According to his plea agreement, Concepcion was not aware that the traffickers were moving drugs, but he knew they were doing something suspicious and their money was coming from illegal activities.

In the present case, the Defendants are accused in connection with a drug conspiracy occurring from 2014-2017 (the "Carlson Conspiracy"). In the Carlson Conspiracy, private aircrafts were used to fly large quantities of cocaine, methamphetamine, and marijuana

---

[2] The plane used in the November 2, 2010 incident had the tail number N213BA and was owned by Marquez Brothers Aviation, LLC at the time of the incident. The plane N213BA was later purchased by Starjet.

3

disguised as computer servers from the West Coast to various cities on the East Coast. Suitcases full of cash would travel in the reverse. Payment of bills was done exclusively in cash, which Carlson sometimes hid in the airplane's microwave. The government describes a specific incident in the Carlson Conspiracy where Carlson and his associates accidentally left a suitcase in the trunk of a car. Although the plane had traveled a significant distance, Carlson had the pilots turn around to pick up the suitcase. Additionally, the Carlson Conspiracy also used structured deposits to avoid CTRs.

The government asserts that evidence and testimony related to the 2008 Hawaii Incident and 2010 Hollywood Conspiracy are admissible under Federal Rule of Evidence ("FRE") 404(b) to support Sarkhosh's knowledge and intent to participate in the Carlson Conspiracy. Defendants argue that the evidence and testimony is inadmissible because the proposed evidence does not satisfy the three-part test for admissibility under FRE 404(b).

As further explained below, the Court finds that the evidence and testimony related to the 2008 Hawaii Incident should not be admitted under FRE 404(b) because there is no evidence to suggest Sarkhosh was personally involved with that incident. Regarding the evidence and testimony related to the 2010 Hollywood Conspiracy, the evidence will be admissible only if it is apparent that the probative value of the evidence is not outweighed by the danger of unfair prejudice and after the government has laid the proper foundation.

## II. ANALYSIS

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," however, such evidence may be admissible for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident." Fed. R. Evid. 404(b). The Sixth Circuit uses a three-step inquiry for determining whether evidence is admissible under FRE 404(b): (1) the court must make a

4

preliminary determination regarding whether there is sufficient evidence that the "other acts" took place; (2) the court must determine whether those "other acts" are admissible for a proper purpose under FRE 404(b); and (3) the court must determine whether the "other act" evidence is more prejudicial than probative under FRE 403. *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir.2004).

Regarding step one, the sufficiency standard of FRE 404(b) is not particularly burdensome. It only requires that the "jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). "The fact that the testimony establishing a defendant's other acts is impeachable does not render the evidence irrelevant or insufficient." *United States v. Johnson*, 458 F. App'x 464, 470 (6th Cir. 2012). The Sixth Circuit has found that "the testimony of a single witness is sufficient for a reasonable jury to conclude that the defendant committed the prior acts, even where the witness is less than completely reliable." *United States v. Thompson*, 690 F. App'x 302, 307 (6th Cir. 2017) (The court found that the sufficiency standard was fulfilled where two convicted felon witnesses, who held strong personal views against the defendant, testified as to the prior acts.); *Johnson*, 458 F. App'x at 470; *United States v. Sandoval*, 460 F. App'x 552, 562 (6th Cir. 2012) (The court found that the sufficiency standard was fulfilled where one uncorroborated witness involved in the prior acts testified as to the defendant's involvement in the acts.).

At step two, the other acts evidence is offered for a proper purpose if (a) the evidence relates "to a matter which is 'in issue,'" and (b) the conduct involved was "substantially similar and reasonably near in time to the offenses for which the defendant is being tried." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985) (citing *United States v. Ring*, 513 F.2d 1001, 1005 (6th Cir.1975)). The evidence must be "probative with regard to the purpose for which it is offered." *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003).

Finally, step three involves an inquiry as to whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. The availability of other means of proof is one factor to be considered in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) (citing *Huddleston*, 485 U.S. at 688).

### A. The 2008 Hawaii Incident.

The Court must first determine whether there is sufficient evidence that the other acts relating to the Hawaii Incident took place. The Court finds that there is sufficient evidence that the prior acts related to this incident occurred. Concepcion, Sarkhosh, and Karu all recalled the incident in various interviews with agents. (DE 331-1 at 1-2, 331-2 at 4, 331-5 at 5, 331-6 at 3.) The jury could reasonably conclude that the acts occurred based on the reports of investigation ("ROI") from those interviews alone. However, Defendant Sarkhosh was not necessarily the actor in the prior acts. Although the plane used in the Hawaii Incident was chartered through Starjet—a company co-owned by Sarkhosh—the government has not directed the Court to any evidence that he was personally involved with that incident.

Additionally, the evidence does not pass muster under step two. The government seeks to introduce evidence related to the Hawaii Incident to show knowledge and intent to participate in the Carlson Conspiracy. Knowledge and intent to participate in the Carlson Conspiracy will likely be two central issues in Sarkhosh's case. Thus, the evidence relates to a matter "in issue." However, the conduct involved in the Hawaii Incident is not substantially similar to the conduct alleged in the Carlson Conspiracy. First, both incidences involve entirely different sets of people. Second, there is no evidence that Sarkhosh was personally involved in the Hawaii Incident. Accordingly, the Court finds that the Hawaii Incident and the Carlson Conspiracy are not substantially similar. Thus, the evidence of prior acts relating to the Hawaii Incident will be excluded.

### B. The 2010 Hollywood Conspiracy.

The Court must first determine whether there is sufficient evidence that the other acts relating to the Hollywood Conspiracy took place. The Court finds that there is sufficient evidence that the prior acts related to this conspiracy occurred. First, fourteen people were indicted in the Hollywood Conspiracy, including pilot and potential witness Leonardo Concepcion, who eventually pleaded guilty to money laundering conspiracy. Although Sarkhosh was not indicted in the Hollywood Conspiracy, flight logs put him as pilot-in-command or second-in-command on eight flights involving the traffickers from the Hollywood Conspiracy. (DE 331-1 at 3-10.) Sarkhosh argues that there is no evidence supporting that he knew of the Hollywood Conspiracy in real time other than Concepcion's unsubstantiated claims that Sarkhosh told him mid-air that "he [Sarkhosh] thought that the traffickers were transporting drugs" and (2) "they [Karu and Sarkhosh] reassured him that law enforcement said that Starjet did nothing wrong and that he should continue doing the flights." (DE 341 at 12.) The government represents, however, that it will not present evidence that Sarkhosh had knowledge of the Hollywood Conspiracy in real time. (DE 353 at 4.) Instead, the government's position is that Sarkhosh's eventual discovery that the Hollywood Drug Ring was transporting cocaine and money on flights that he piloted is relevant to Sarkhosh's knowledge and intent to participate in the Carlson Conspiracy—a conspiracy in which Sarkhosh piloted flights that transported drugs and money by a similar method and manner as the Hollywood Conspiracy. Second, Concepcion and Sarkhosh, recalled the Hollywood Conspiracy in their interviews with agents. (DE 331-2 at 3, 331-5 at 7). And although Concepcion's recollection of conversations he had with Sarkhosh and Karu are uncorroborated, his recollection is sufficient for a jury to reasonably conclude that the conversations occurred and that Sarkhosh was the actor. Sarkhosh argues that Concepcion is a pathological liar and that evidence from his post-arrest interview from 2010 contradicts

7

his representations to law enforcement in the Carlson Conspiracy investigation. (DE 341 at 6, 18.) However, "the testimony of a single witness is sufficient for a reasonable jury to conclude that the defendant committed the prior acts, even where [he] is less than completely reliable[,]" and "[t]he fact that the testimony establishing [the] defendant's other acts is impeachable does not render the evidence irrelevant or insufficient." *Thompson*, 690 F. App'x at 307; *Johnson*, 458 F. App'x at 470; *Sandoval*, 460 F. App'x at 562. Thus, the Court finds that there is sufficient evidence that the prior acts occurred relating to the Hollywood Conspiracy. Whether Concepcion is credible is something that can, and should, be explored on cross-examination if he testifies.

The Court must next determine whether the other acts are admissible for a proper purpose under FRE 404(b). The Court finds that the evidence relating to the Hollywood Conspiracy is admissible for a proper purpose. The government seeks to offer evidence relating to the Hollywood Conspiracy to show knowledge and intent to participate in the Carlson Conspiracy. As stated above, the government's position is that Sarkhosh's eventual discovery that the Hollywood Drug Ring was transporting cocaine and money on flights that he piloted in the Hollywood Conspiracy is relevant to whether Sarkhosh knew that Carlson was transporting drugs and money on flights he piloted in the Carlson Conspiracy and whether he intended to join and further that conspiracy. The government further contends that the similarities between the Hollywood Conspiracy and the Carlson Conspiracy help to prove Sarkhosh's state of mind. In the present case, the conspiracy to distribute controlled substances charges requires that the government prove that Sarkhosh joined the conspiracy and was "aware of the object of the conspiracy and that he voluntarily associated himself with it to further its objectives[,]" *United States v. Hodges*, 935 F.2d 766 (6th Cir. 1991), and the conspiracy to commit money laundering charge requires the government to prove that Sarkhosh "knowingly and voluntarily" joined the conspiracy. Knowledge and intent to

8

participate in the Carlson Conspiracy will likely be two central issues in Sarkhosh's case. Thus, the Court finds that the evidence relates to a matter "in issue." The Court also finds that the Hollywood Conspiracy and the acts involved therein are substantially similar and reasonably near in time to the offenses for which Sarkhosh is being tried. The conspiracies had the following similarities: both involved flights piloted by Sarkhosh; both involved drug trafficking on private planes with large sums of drugs moving from west to east and large sums of cash moving from east to west; both involved exclusive cash payments for services; and both involved hiding money in an airplane microwave. And although Sarkhosh highlights differences between the two conspiracies—mainly that the conspiracies involved different actors and the planes used in the Hollywood Conspiracy were not owned by Sarkhosh—Sarkhosh's presence on flights in both conspiracies is an overwhelmingly significant similarity. The acts involved in the Hollywood Conspiracy are also reasonably near in time to the Carlson Conspiracy as they occurred only a few years before the start of the Carlson Conspiracy. The Court also finds that the acts of the Hollywood Conspiracy are probative with regard to knowledge and intent to participate in the Carlson Conspiracy. Sarkhosh's presence on planes involved in the Hollywood Conspiracy and his knowledge of the nature of that conspiracy after the fact is probative of whether Sarkhosh knew Carlson was transporting money and drugs on flights piloted by him and whether he intended on joining that conspiracy. Accordingly, the Court finds that the evidence relating to the Hollywood Conspiracy is admissible for a proper purpose.

Finally, the Court must determine whether the probative value of the other act evidence is substantially outweighed by the danger of unfair prejudice. One consideration in this analysis is whether there are other available means of proof. *See Merriweather*, 78 F.3d at 1077 (citing *Huddleston*, 485 U.S. at 688). The Court recognizes that the evidence relating to the Hollywood Conspiracy is probative of Sarkhosh's knowledge and intent to participate

9

in the Carlson Conspiracy. However, if there is otherwise sufficient evidence to support Sarkhosh's knowledge and intent to participate in the Carlson Conspiracy, evidence relating to the Hollywood Conspiracy should not be admitted. At this time, the Court is unable to determine whether the overall probative value of the Hollywood Conspiracy evidence is substantially outweighed by the danger of unfair prejudice to Sarkhosh. It is difficult for the Court to speculate on the forefront regarding the propriety of the other act evidence without knowing what other evidence the government possesses to support Sarkhosh's knowledge and intent to participate in the Carlson Conspiracy. Accordingly, during the trial, if the government believes that the other act evidence is necessary to its case-in-chief, it may approach the bench and ask the Court for permission to admit the evidence. Additionally, the government must lay the appropriate foundation before such evidence will be admissible and be prepared to demonstrate why the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Likewise, Sarkhosh should object if he believes the evidence is irrelevant, overly prejudicial, or not necessary. If such evidence is admitted, the Court will give a limiting instruction to mitigate the risk of prejudice.

### III. CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** as follows:

(1) Defendants' motion in limine (DE 341) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion is **GRANTED** to the extent it seeks to exclude evidence relating to the 2008 Hawaii Incident and **DENIED** to the extent it seeks to exclude evidence relating to the 2010 Hollywood Conspiracy.

(2) The motion in limine is **DENIED AS MOOT** as to Robert Earl Wallace.

(3) If the government seeks to introduce evidence relating to the 2010 Hollywood Conspiracy, it shall seek the Court's permission and lay the appropriate foundation before doing so.

Dated February 21, 2020.



Signed By:
Karen K. Caldwell
United States District Judge