UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CRIMINAL ACTION NO. 5:17-118-KKC |
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| **KATHERINE MATTHEWS**<br>**ROBERT CHIPPERFIELD, JR.,**<br>**TORREY WARD,**<br>**KENDRA TALLY, and**<br>**NADER SARKHOSH,** | |
| Defendants. | |

*** *** ***

This matter is before the Court on the Defendants' motion in limine (DE 428), which seeks to exclude and/or limit the expert testimony of five government witnesses. For the reasons stated below, the Defendants' motion (DE 428) is **DENIED**.

## I. BACKGROUND

This case is set for jury trial beginning on February 24, 2020. The Court ordered that notice of experts be given 45 days prior to trial. The government has filed two expert witness notifications in this case. The first expert notice was filed on August 16, 2019, and it named four experts who would testify at trial: Jeremy Triplett, Billianne Withers, Ryan Gorman, and Raymond M. Shaw. (DE 280.) The second expert notice was filed on February 5, 2020, and it named three additional experts who would testify at trial: Neal Spanier, Charles Phillips, and Kevin Patsey. (DE 415.)

1

Defendants' motion in limine requests that the Court exclude or limit the expected trial testimony of government expert witnesses Billianne Withers, Ryan Gorman, Neal Spanier, Charles Phillips, and Kevin Patsey. Defendants raise several arguments as to why the experts should be excluded. First, Defendants argue that Gorman's expected testimony about "cartel practices" is highly prejudicial and not helpful to the jury. Second, Defendants argue that Withers is not qualified. Third, Defendants argue that Withers, Spanier, Phillips, and Patsey's testimony is inadmissible because it will violate Federal Rule of Evidence ("FRE") 704(b), which prohibits experts from opining on whether a defendant has a culpable mental state. Fourth, Defendants assert prejudice because the testimony of Spanier, Phillips, and Patsey would be duplicative and cumulative. Fifth, Defendants point out that the government's second expert notice violates the Court's order that notice of experts be given 45 days prior to trial. Finally, Defendants assert that the subject matter of the government's second expert notice far exceeds the scope of the government's prior, timely expert notice. The Court will address the Defendants' arguments as to each of the government's experts.

## II. ANALYSIS

### A. Testimony of Ryan Gorman.

Defendants argue that Ryan Gorman's testimony should be excluded because his expected testimony about "cartel practices" has limited probative value and is highly prejudicial. (DE 428 at 8-9.)

The government's notice of expert witnesses provides that Gorman will testify as to the progression of using private aircraft to transport controlled substances across the United States as opposed to ground transport, the characteristics of transportation of controlled substances by private aircraft, and how cash proceeds from the distribution of controlled substances are transported by private aircraft back to the ultimate parties responsible. (DE 280 at 2-3.)

2

Under FRE 403, a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

The Court finds that Gorman's expected testimony is highly probative as it is relevant to context, connection, and knowledge. Gorman will testify as to how cartel sources of supply dictate logistical details for the distribution and handling of its drugs, including location, timing, packaging, and amounts. (DE 448 at 5-6.) This testimony is relevant to context and connection because it will provide a foundation for Carlson's alleged co-conspirator relationships with the Defendants. Additionally, the testimony will highlight a pattern of conduct. Whether there was a pattern of conduct is probative of whether Defendants had knowledge that Carlson was transporting large amounts of money and drugs on the various flights. *See United States v. Lipscomb*, 14 F.3d 1236, 1242 (7th Cir. 1994) ("It is no stretch … for a law enforcement expert to say that a certain pattern of conduct evinces a particular kind of criminal activity. On the contrary, such testimony is considered quite helpful in drug-trafficking cases.") Knowledge of the Defendants is going to be a critical issue in the case. For the conspiracy to distribute controlled substances charges, the government bears the burden to prove that the Defendants joined the conspiracy and were "aware of the object of the conspiracy and that [they] voluntarily associated [themselves] with it to further its objectives." *United States v. Hodges*, 935 F.2d 766 (6th Cir. 1991). Accordingly, the probative value of Gorman's testimony is high.

Although the Court recognizes that references to cartel practices is somewhat prejudicial, the evidence is highly probative as it relates to context, connection, and knowledge. Accordingly, the Court will permit Gorman to testify as to the opinions described in the government's notice of expert witnesses. However, the government is cautioned not to place

3

undue emphasis on the connections to the cartel. It shall only reference the cartel to the extent necessary to show context, connection, and knowledge. Defendants should object if they believe the evidence becomes overly prejudicial.

### B. Testimony of Billianne Withers.

Defendants argue that Billianne Withers is not qualified under FRE 702-703 and *Daubert* to testify regarding the aviation industry, her testimony should be excluded under FRE 704(b), and her testimony has no probative value. (DE 428 at 6-8.)

#### 1. Qualifications Under FRE 702-703 and *Daubert*.

Defendants argue that Withers is not qualified under FRE 702-703 and *Daubert* to testify regarding the aviation industry. (DE 428 at 6.) The government states, however, that Withers will not be opining or offering testimony about the private aviation industry. (DE 448 at 4.) Accordingly, the Court considers the Defendants' argument about Withers' lack of qualifications moot.

#### 2. Admissibility of Withers' Testimony under FRE 704(b).

Defendants further assert that Withers testimony should be excluded under FRE 704(b). (DE 428 at 6-8.) FRE 704(b) prohibits expert witnesses from directly opining about whether a defendant did or did not have the mental state or condition that serves as an element of the crime charged. *United States v. Combs,* 369 F.3d 925, 940 (6th Cir. 2004). However, experts may opine as to the common practices of those who possess the requisite knowledge and intent as long as they leave the ultimate conclusion of whether the defendant on trial had the requisite knowledge and intent to the jury. *Id. See also United States v. Frost*, 125 F.3d 346, 383–84 (6th Cir.1997) (citing *Lipscomb*, 14 F.3d at 1239). The jury may consider the expert's opinion as to the common practices of those who possess the requisite knowledge and

4

intent and thereafter, draw inferences as to whether the defendant—who allegedly engaged in those common practices—had the requisite knowledge and intent. *Id.*

The government's notice of expert witnesses states that Withers will testify as to the numerous cash receipts and transactions for trips where controlled substances were delivered by the defendants, the tracing of drug proceeds of the defendants, and the tracing of drug proceeds to pay for the drug and money flights. The government further provides that Withers will opine that the cash transactions were financial transactions, there were several financial instances where "red flags" appeared, and running a legitimate computer service business with legitimate customers does not operate totally in cash. (DE 280 at 2.)

Withers testimony is permissible as long as she does not opine as to whether the Defendants possessed the requisite knowledge and intent to participate in the conspiracy. If during the trial the Defendants believe that a question posed to Withers will elicit testimony from her regarding whether they possessed the requisite mental state to participate in the illegal activity or if Withers testifies as to whether the Defendants possessed the requisite mental state to participate in the illegal activity, they should immediately raise an objection.

### 3. Probative Value of Withers' Testimony.

Finally, Defendants assert that Withers' testimony has no probative value. (DE 428 at 7.) The Court disagrees. Withers will help the jury trace certain financial transactions involved in the drug distribution conspiracy. Additionally, her testimony regarding common red flags indicative of illegal activity and the red flags present in the Defendants' financial transactions is probative of whether Defendants had knowledge and intent to participate in the conspiracy. Accordingly, Withers' testimony will not be excluded on this basis.

### C. Testimony of Neal Spanier, Charles Phillips, and Kevin Patsey.

Defendants argue that Neal Spanier, Charles Phillips, and Kevin Patsey's testimony should be excluded because (1) the government's notice of these experts was untimely; (2) the

testimony is inadmissible under FRE 704(b); and (3) the testimony is cumulative and duplicative under FRE 403. (DE 428 at 9-12.) The government states that it no longer intends to call Phillips, so the Court does not further consider the Defendants' arguments as they relate to Phillips. For the reasons stated below, the Court finds that the testimony of Spanier and Patsey is admissible as it is described by the government's notice and subsequent briefing.

**1. Untimeliness of Government's Disclosure of Expert Witnesses.**

The government's notice of expert witnesses Neal Spanier and Kevin Patsey was untimely. Defendants assert that since notice was untimely, testimony of those experts should be excluded. (DE 428 at 2.)

Courts generally examine three factors when considering whether it should exclude an expert's testimony based on a delayed disclosure: (1) the reason for the party's delay, including whether the party acted intentionally or in bad faith; (2) the degree of prejudice to the opposing party; and (3) whether the prejudice can be cured with a less severe action. *See United States v. Wolford*, 656 F. App'x. 59, 62 (6th Cir. 2016); *see also United States v. Maples*, 60 F.3d 244, 247 (6th Cir. 1995). "District courts should embrace the least severe sanction necessary doctrine, and hold that suppression of relevant evidence as a remedial device should be limited to circumstances in which it is necessary to serve remedial objectives." *United States v. Ganier*, 468 F.3d 920, 927–28 (6th Cir. 2006) (internal quotations omitted); *see also Maples*, 60 F.3d at 247 ("[S]uppression of evidence must be viewed as an undesirable remedy reserved for cases of incurable prejudice or bad faith conduct demanding punishment by the court.").

The government has shown good cause for its delay, and it does not appear to have acted intentionally or in bad faith. The government's first notice of expert witnesses named Raymond M. Shaw. (DE 280 at 3.) Shaw was an Aviation Safety Inspector for the FAA who

was going to testify as to standards and operations within the private airline industry and the requirements of flight and maintenance logs required by pilots of private aircrafts. The government states that Shaw retired from the FAA, and it became clear in late 2019 that he was not going to be available to testify in February. Accordingly, the government began looking for an alternative FAA expert. The government states it became aware of Neal Spanier in January 2019—after the 45-day, Court-ordered deadline. (DE 448 at 3.) The government named Spanier in its second notice of expert witnesses as a replacement for Shaw.

The government also named Kevin Patsey as an expert witness in its second notice. Unlike Spanier, Patsey is an entirely new expert witness who does not serve as a replacement for any of the witnesses listed in the government's first notice of expert witnesses. The government states that Patsey's testimony will be primarily regarding customary practices in the private charter business. (DE 448 at 3.) The government states that the untimely disclosure of Patsey was in part due to the Defendants' notice of expert Captain Andrew Delatorre—a longtime pilot and airplane captain in the private aviation industry—who will testify as to "the common customs, practices, policies, and procedures in the industry, with respect to client behavior, pilot interactions with clients, inspection of luggage, etc." (DE 428 at 11; DE 448 at 2-3.) Delatorre was noticed by the Defendants on November 20, 2019. (DE 332.) The government states that it approached two experts before contracting with Patsey and that both of those experts became unavailable for business reasons after initial discussions. Patsey was only first contacted on January 21, 2019 and contracted for testimony on February 4, 2020. (DE 448 at 7.)

The Court finds that the government has provided sufficient justification for its late disclosure of Spanier and Patsey. Additionally, there is no indication that the government's delayed notification of Spanier or Patsey was intentional or in bad faith.

7

Defendants are also not significantly prejudiced by the swap of Spanier for Shaw or the addition of Patsey.  Defendants assert that the notice indicates that the scope of Spanier's anticipated testimony is significantly more extensive than the scope of what Shaw's testimony would have been. (DE 451 at 6.)  While the government's notice of Spanier does indicate intent to introduce testimony on topics not included in the government's notice of Shaw, the additional topics relate to the anticipated testimony of defense expert Delatorre.

The government's notice of Spanier states that he will testify as to the customary pilot practices during charter and private jet flights and the FAA's rules for planes, pilots, and other related flight requirements—including testimony regarding aircraft preflight requirements, weight and balance issues with respect to operating an aircraft, and how weight and balance issues can impact passengers, luggage, cargo, and safety.  The government's notice further states that Spanier, as a former commercial charter and contract pilot, will testify about his knowledge of the practices, procedures, and customary behavior of pilots vis-à-vis passengers under the FAA's operating rules.  Spanier will further testify about aircraft operating expenses, compensation rates for the various aircraft flown in this case, and the suspicious circumstances surrounding the private flights of Robert Carlson that, taken as a whole, would have raised red flags for any experienced licensed commercial pilot.   (DE 415 at 1-2.)

Defendants state that expert witness Delatorre—a longtime pilot and airplane captain in the private aviation industry—will testify as to "the common customs, practices, policies, and procedures in the industry, with respect to client behavior, pilot interactions with clients, inspection of luggage, etc." (DE 428 at 11.) Defendants' notice of expert witness states that Delatorre "will create a written report setting forth his background knowledge of the charter flight industry, his understanding of the customs, practices, and expectations of private

8

charter pilots vis-a-vis passengers, and his analysis of the discovery in [Defendant Chipperfield's] case relating to the issues set forth above." (DE 332 at 1.)

The government states that Spanier's testimony will "focus ... on applicable FAA regulations with respect to cargo, passengers, and weight and balance." Delatorre is expected to testify regarding the common customs, practices, policies, and procedures in the industry. Although Spanier's testimony is more specific in that it will address knowledge of the practice, procedures, and customary behavior of pilots vis-à-vis passengers under the FAA's operating rules, both Spanier and Delatorre's anticipated testimony will cover what is customary in the industry. Accordingly, the Court finds that Defendants are not significantly prejudiced by the swap of Spanier for Shaw.

Defendants are also not significantly prejudiced by the addition of Patsey to the government's case. The government states that Patsey's testimony will primarily address customary practices in the private charter business. (DE 448 at 3.) Defendants already have an expert who is a longtime private aviation industry pilot who will testify as to "the common customs, practices, policies, and procedures in the industry, with respect to client behavior, pilot interactions with clients, inspection of luggage, etc." (DE 428 at 11.) Additionally, Defendants' notice of expert witness provides that Delatorre "will create a written report setting forth his background knowledge of the charter flight industry, his understanding of the customs, practices, and expectations of private charter pilots vis-a-vis passengers, and his analysis of the discovery in [Defendant Chipperfield's] case relating to the issues set forth above." Accordingly, the Defendants already have a defense expert who is capable of testifying as to the same topics as Patsey. Thus, the Court finds that the prejudice suffered due to the late notice is somewhat minimal.

Although the government's second notice was beyond the deadline set by the Court for the disclosure of experts, the Court will permit Spanier and Patsey to testify as described in

9

the government's notice and subsequent briefing. The government has shown good cause for its delay, and it does not appear to have acted intentionally or in bad faith. Additionally, the prejudice suffered by the Defendants as a result of the late notice is rather minimal considering the Defendants already have an expert who will be testifying as to similar information. As such, the Court will not exclude Spanier and Patsey's testimony on the basis that the government's notice was untimely.

### 2. Admissibility of Spanier and Patsey's Testimony under FRE 704(b).

Defendants assert that Spanier and Patsey's testimony is inadmissible because it will violate FRE 704(b), which prohibits experts from opining on whether a defendant has a culpable mental state. (DE 428 at 9-12.) Experts may, however, opine as to the common customs, practices, policies, and procedures within a particular industry as long as they leave to the jury the ultimate conclusion of whether the defendant on trial had the requisite mental state to commit the alleged crimes. *Combs,* 369 F.3d at 940; *see also Frost*, 125 F.3d at 383–84 (citing *Lipscomb*, 14 F.3d at 1239). The jury is permitted to consider the expert's opinion as to the common practices of those who do and do not possess the requisite mental state to commit the crimes and thereafter, draw inferences as to whether the defendant—who allegedly engaged in those common practices—had the requisite mental state to commit the alleged crimes. *Id.*

The Defendants argue that it would be improper for the government's aviation experts to testify about practices that would *generally* raise "red flags" for pilots indicating potential contraband was being transported or that, at the very least, Carlson's purported business endeavor was not legitimate. They assert that the only purpose of Spanier and Patsey's testimony is to show that the Defendants knew or should have known of Carlson's illegal activities. (DE 428 at 10-11.) But Defendants do not cite to any cases in which such general testimony regarding red flags was prohibited. Instead, the cases cited by the government

10

tend to support that red flag testimony is permissible, as long as the experts do not opine on whether the defendants on trial possessed the requisite mental state to commit the crimes. *See United States v. Stapleton*, 2013 WL 5966122, at *5 (E.D. Ky. Nov. 8, 2013) ("Common experience suggests that without expert testimony, typical jurors would miss red flags suggesting a pain clinic is up to no good."). *See also United States v. Chube II*, 538 F.3d 693, 700 (7th Cir. 2008); *United States v. Clark*, 2010 WL 1936174, at *3 (W.D. Mo. May 13, 2010); *United States v. Crinel*, 2018 WL 4076352, at *31 (E.D. La. Aug. 27, 2018).

The government states that Spanier will testify regarding his knowledge of the practices, procedures, and customary behavior of pilots vis-à-vis passengers under the FAA's operating rules. The government further provides that Spanier will testify regarding the suspicious circumstances surrounding the private flights of Robert Carlson that, taken as a whole, would have raised red flags for any experienced licensed commercial pilot. (DE 415 at 1-2.) The government states that Patsey will testify regarding the customary practices in the private charter business. The government states that Patsey will also testify regarding the suspicious circumstances surrounding the private flights of Robert Carlson that, taken as a whole, would have raised red flags for any experienced licensed commercial pilot. (DE 415 at 2-3.)

Spanier and Patsey's testimony is admissible as long as their testimony describes the customs, practices, procedures, and red flags in general terms and avoids discussing the Defendants' specific mental state. The government represents that the experts will testify in general terms and "no expert for [the] government will testify that any particular action or behavior in this case was necessarily indicative of a criminal intent, precluding any other intention for the given action or behavior." (DE 448 at 10.)

Accordingly, the testimony outlined by the government is permissible under FRE 704(b). If during the trial the Defendants believe that a question posed to Spanier or Patsey will

11

elicit testimony regarding whether the Defendants possessed the requisite mental state to participate in the illegal activity or if Spanier or Patsey testify as to whether the Defendants' possessed the requisite mental state to participate in the illegal activity, they should immediately raise an objection.

### 3. Cumulative and Duplicative Testimony.

Finally, the Defendants argue that Spanier and Patsey's testimony is cumulative and duplicative. Thus, Defendants contend that the testimony should be excluded under FRE 403 because its probative value is significantly outweighed by the danger of needlessly presenting cumulative evidence. (DE 428 at 9-10.)

As stated above, under FRE 403, a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

The government's second notice of expert witnesses naming Spanier and Patsey states that they will both testify as to the following: (a) customary pilot practices and procedures under the FAA operating rules; (b) weight and balance issues with respect to operating an aircraft and how those issues impact passenger, luggage, cargo, and safety; (c) pilot compensation rates; and (d) their opinion that there were suspicious circumstances surrounding the private flights of Robert Carlson that, taken as a whole, would have raised red flags for any experienced licensed commercial pilot. (DE 415 at 1-3.)

The Court finds that the scope of Spanier and Patsey's testimony as listed in the expert notice is somewhat cumulative and duplicative. However, the Court considers the government's representation that Spanier will focus more on applicable FAA regulations with respect to cargo, passengers, and weight and balance, while Patsey will primarily testify about customary practices in the private charter business. (DE 448 at 3.) Based on that

representation, the Court will permit both Spanier and Patsey to testify. The government is admonished not to elicit testimony that is needlessly cumulative or duplicative.

The Court further finds that the anticipated testimony of Spanier and Patsey has a high probative value. Both Spanier and Patsey's testimony will help lay a foundation for the alleged crimes committed by the Defendants. Additionally, Spanier's testimony regarding the applicable FAA regulations with respect to cargo, passengers, and weight and balance is probative because it will help the jury to understand the common customary practices, policies, and procedures in the aviation industry. Knowing what is customary in the aviation industry will help the jury determine whether the Defendants—based on their actions—had the requisite knowledge and intent to participate in the conspiracy. Likewise, Patsey's testimony regarding the customary practices in the private charter business is probative because it will help the jury understand what is common and customary in the private charter business. Knowing what is customary in the private charter business will help the jury determine whether the Defendants—based on their actions—had the requisite knowledge and intent to participate in the conspiracy.

At this time, the Court finds that Spanier and Patsey's testimony should not be excluded under FRE 403. However, the Court recognizes that there is a risk that Spanier and Patsey's anticipated testimony—based on the government's notice of expert witnesses—has the potential to become cumulative and duplicative. If at any point during the trial any of the Defendants believe that the testimony of Spanier or Patsey has become needlessly cumulative or duplicative, they should immediately raise an objection.

## III. CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** that the Defendants' motion in limine (DE 428) is **DENIED**. The Defendants should raise an objection if they believe that any of the government's experts have testified beyond what is permitted by the Federal Rules of Evidence.

Dated February 24, 2020.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY